THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROGER MOORE, Defendant-Appellant.

First District (2nd Division)   No. 1—09—0662

Opinion filed March 29, 2011.

Michael J. Pelletier, Patricia Unsinn, Alan D. Goldberg, and Todd T. McHenry, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Ashley A. Romito, Jon Walters, and Robert Schwarz, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARRIS delivered the judgment of the court, with opinion.

Presiding Justice Cunningham concurred in the judgment and opinion.

Justice Karnezis dissented, with opinion.

## OPINION

Defendant, Roger Moore, was found guilty by a jury of delivery of a controlled substance and sentenced to seven years' imprisonment. 720 ILCS 570/401(d)(i) (West 2008). Defendant urges this court to consider whether statements he made to the trial court before his trial commenced, in which he indicated that he had not taken his medication on the day of trial or two days prior to trial, raised a *bona fide* doubt regarding his fitness to stand trial.[1] We find that the court psychiatrist's testimony was uncontradicted that defendant needed to be on medications to be fit for trial. The defendant's not being on medication immediately before and during trial raised a *bona fide* doubt as to his fitness to stand trial. The trial court erred when it did not *sua sponte* order a fitness hearing. We remand with directions to the trial court to conduct a retrospective fitness hearing to determine the defendant's competency at the time of trial.

## JURISDICTION

The circuit court sentenced defendant on March 3, 2009. The following day, defendant timely filed his notice of appeal. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below. Ill. Const. 1970, art. VI, §6; Ill. S. Ct. R. 603 (eff. Oct. 1, 2010); R. 606 (eff. Mar. 20, 2009).

## BACKGROUND

Following a jury trial, defendant was found guilty of delivery of a controlled substance and sentenced to seven years' imprisonment. 720 ILCS 570/401(d)(i) (West 2008). Prior to trial, the trial court conducted a fitness hearing on August 7, 2008. At the fitness hearing, Dr. Dawna Gutzmann, a psychiatrist with the Forensic Clinical Services for the circuit court of Cook County, testified as to defendant's fitness to stand trial. Dr. Gutzmann diagnosed defendant with depressive disorder, not otherwise specified, and alcohol, cocaine, and heroin

---

[1]Defendant raised several issues on appeal. However, due to our disposition of the issue of his fitness to stand trial, we need not consider his other arguments at this time.

dependence. Dr. Gutzmann testified she had the impression that defendant was "malingering," which she explained is "the intentional feigning or exaggerating of symptoms of physical or mental illness for secondary gain." Dr. Gutzmann testified that defendant reported to her that he was experiencing auditory hallucinations and that he heard voices, but that he could not understand what the voices were saying. Defendant was prescribed 150 milligrams of Zoloft to be taken each morning and 100 milligrams of doxepin at bedtime. Both medications are for treating depression. On direct examination, when asked whether defendant's prescribed medications "impact his ability to cooperate or assist in his defense with counsel," Dr. Gutzmann responded, "[i]n my opinion, he needs those medications in order to be fit for trial." On cross-examination, Dr. Gutzmann added, "[i]t's my opinion that if he was not taking the medication, that he would—there is a substantial probability that he would become unfit to stand trial." On re-cross-examination, Dr. Gutzmann was asked whether she "found Mr. Moore fit to stand trial under the assumption that he would continue to be medicated up until and through the trial time." Dr. Gutzmann responded, "Yes." The trial court found defendant fit to stand trial with medication.

Prior to selecting the jury, defendant's attorney renewed the issue of defendant's fitness to stand trial, arguing that there was no evidence that defendant was on any medication when the crime occurred. The State asked the court to inquire whether defendant had taken his medication, which the trial court did. The following exchange took place between the court and defendant:

"THE COURT: When did you take [the medications] last?

DEFENDANT: Yesterday. I didn't get none this morning. They didn't call me out.

THE COURT: And when do you take them; everyday?

DEFENDANT: I take it twice a day.

THE COURT: Okay, if Counsel could double check on that. I'm not sure what, if any, affect it would have if he hasn't yet had his today's dosage.

But you did have it yesterday?

DEFENDANT: I had last night's dose but not this morning. I get it in the morning and at night.

THE COURT: And when prior to yesterday, when was the last time you got it?

DEFENDANT: That morning. The morning—yesterday morning and then last night before we laid down and went to sleep.

THE COURT: Oh, you got it again last night.

DEFENDANT: But I didn't get it this morning.

MS. FRANSENE [assistant public defender]: He gets it two times a day.

DEFENDANT: I get it twice a day.

THE COURT: Okay. And have you been getting it—other than today so far, have you been getting it everyday?

DEFENDANT: Well, no, not really. A couple of times—because they had just moved from division eight over to two. So everything is just kind of messed up.

THE COURT: But you had it two times yesterday. What about the day before?

DEFENDANT: No, I didn't get it.

THE COURT: If counsel wants to make an inquiry while we're on break and revisit it if it's really an issue, it doesn't appear to be an issue, but—the fact that he hasn't taken it yet today, but I'll certainly hear you out if that's the case."

Defense counsel did not object to defendant's fitness based on his failing to receive his medications until after trial.

After the two-day trial was completed, defense counsel filed a supplemental motion for new trial or judgment of acquittal arguing defendant was denied due process because he was tried while he may not have received his medications and, thus, was unfit to stand trial. Defense counsel informed the court that she could only obtain records that showed what medications defendant was taking and how often he was prescribed those medications, not whether defendant actually took the medications. The trial court denied defendant's motion, reasoning:

"Defense counsel made an unsuccessful effort to find out exactly when he had medicine, when he may not have had medicine. He was not able to ascertain that.

The court was satisfied both with the demeanor of the defendant and the fact he himself stated he had had his medicines as of a prior date."

## ANALYSIS

Defendant argues that there was a *bona fide* doubt as to whether he was fit to stand trial based on his indication to the trial court that he had not taken his medications regularly before the trial began. However, defendant did not properly preserve this issue for appeal. Although defendant did object in a posttrial motion to his fitness to stand trial due to his failure to receive his medications, defendant did not make the objection at trial. See *People v. Enoch*, 122 Ill. 2d 176, 186-87 (1988) (a party must object both at trial and in a posttrial motion to properly preserve an issue for appeal). Defense counsel did object before trial to defendant's fitness, but the objection was based on the defendant not being on any medication when the crime occurred. Defense counsel did not object, on the basis that defendant

failed to receive his medication before trial, until after the trial was completed, even though the trial judge prompted defense counsel to inquire further into the matter. Defendant urges this court to consider his argument on the merits, despite having been forfeited due to a procedural default.

We may address defendant's appeal of his forfeited issue on the merits only if the defendant sustains his burden of persuasion on either of the two prongs of the "plain error" doctrine. The plain error doctrine allows this court to review a forfeited claim of error that affects a substantial right in two instances: "where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence" or "where the error is so serious that the defendant was denied a substantial right, and thus a fair trial." *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005); see also Ill. S. Ct. R. 615(a) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."). Under either prong, the defendant bears the burden of persuasion. *Herron*, 215 Ill. 2d at 187. Prejudice must be proven under the first prong of plain error review. *Id.* Under the second prong of plain error analysis, prejudice is presumed, but "the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Id.* A defendant's fitness for trial is a fundamental right. *People v. Sandham*, 174 Ill. 2d 379, 382 (1996) ("prosecuting a defendant where there is a *bona fide* doubt as to defendant's fitness renders the proceeding fundamentally unfair"). Accordingly, we will review defendant's argument regarding his fitness to stand trial on the merits under the second prong of the plain error doctrine.

A defendant is entitled to a fitness hearing when there is a *bona fide* doubt as to his fitness to stand trial because it is a violation of the defendant's due process rights to convict him if he was not fit for trial. *People v. McCallister*, 193 Ill. 2d 63, 110 (2000). The inquiry into whether a *bona fide* doubt exists focuses on whether a defendant is able to assist in his defense and whether he can understand the nature and purpose of the proceedings. *Id.* Defendant has the burden "of proving that, at the time of trial, there were facts in existence which raised a real, substantial and legitimate doubt as to his mental capacity to meaningfully participate in his defense and cooperate with counsel. The test is an objective one." *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991). When facts regarding a defendant's fitness are brought to the trial judge's attention, it is the duty of the trial judge

to *sua sponte* order a fitness hearing. *McCallister*, 193 Ill. 2d at 110-11; see also 725 ILCS 5/104—11(a) (West 2008) ("When a bona fide doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further."). "Once the fitness question is raised, the burden falls on the State to establish a defendant's fitness by a preponderance of the evidence." *People v. Griffin*, 178 Ill. 2d 65, 79 (1997); see also 725 ILCS 5/104—11(c) (West 2008) ("When a bona fide doubt of the defendant's fitness has been raised, the burden of proving that the defendant is fit by a preponderance of the evidence and the burden of going forward with the evidence are on the State.").

Factors that may be considered in determining whether a *bona fide* doubt as to a defendant's fitness exists include, "a defendant's irrational behavior, demeanor at trial, any prior medical opinion on the defendant's competence, and any representations by defense counsel on the defendant's competence." *People v. Brown*, 236 Ill. 2d 175, 186-87 (2010). Further, "[n]o fixed or immutable sign, however, invariably indicates the need for further inquiry on a defendant's fitness. [Citation.] Rather, the question is often a difficult one implicating a wide range of manifestations and subtle nuances." *Id.* at 187. Whether a *bona fide* doubt as to a defendant's fitness exists "depends on the facts of each case." *People v. Murphy*, 72 Ill. 2d 421, 435 (1978). A defendant on medication prescribed to maintain fitness may be tried. *People v. Jackson*, 57 Ill. App. 3d 809, 813 (1978). The determination of whether a *bona fide* doubt exists regarding a defendant's fitness is typically a matter within the discretion of the trial court. *Sandham*, 174 Ill. 2d at 382.

The instant case is factually similar to this court's decision in *People v. Jackson*, in which we held that there was a *bona fide* doubt as to a defendant's fitness where the defendant had not received the medication prescribed to him to maintain his fitness. *Jackson*, 57 Ill. App. 3d at 814. The defendant in *Jackson* had two fitness hearings. *Id.* at 811. At the first fitness hearing, the psychiatrist testified that defendant understood the proceedings, but was unfit because he could not cooperate in his defense. *Id.* Six months later, at the second fitness hearing, the same psychiatrist testified that defendant would be fit for trial with medications. *Id.* The defendant was subsequently found fit to stand trial. *Id.* However, before defendant was to be sentenced, the trial court ordered a fitness examination with the results to be submitted at the sentencing hearing. *Id.* at 814. At the sentencing hearing, the court proceeded to sentence the defendant even though it was informed before the hearing that defendant was never given the ordered fitness examination and that prior to the fitness hearing, the

defendant was not given his medications. *Id.* This court reversed, finding:

> "Because the court's finding of fitness prior to trial was based upon medical testimony that defendant was able to cooperate with his counsel only while being maintained with the prescribed medication and that at the time of sentencing he had not received his medication, we believe that a bona fide doubt was raised as to his fitness. Our opinion is buttressed by the fact that the court indicated concern in this regard when it ordered the presentence fitness examination." *Id.*

In this case, at defendant's fitness hearing, the uncontradicted testimony of Dr. Gutzmann was that defendant "needs those medications in order to be fit for trial," and that "if he was not taking the medication *** there is a substantial probability that he would become unfit to stand trial." Dr. Gutzmann also answered "Yes" when asked whether she found defendant "fit to stand trial under the assumption that he would continue to be medicated up until and through the trial time." The opinion of a medical expert is a factor to consider when determining whether there is a *bona fide* doubt to a defendant's fitness. *Brown*, 236 Ill. 2d at 186-87. Furthermore, the trial court found defendant to be fit to stand trial *with* medication. Dr. Gutzmann diagnosed the defendant with a depressive disorder, and alcohol, cocaine, and heroin dependence. Up to the time of trial the defendant was on a substantial daily regime of two antidepressants, 150 milligrams of Zoloft and 100 milligrams of doxepin. During the trial the defendant told the court that he had not been given his medication because he was moved from division eight over to two and "everything is just kind of messed up." In order to be fit for trial, the defendant had to be on his medication. The fact that defendant had not been given his medication raised a *bona fide* doubt as to defendant's fitness. *Jackson*, 57 Ill. App. 3d at 814. The fact that this chemically dependent defendant was made to suddenly and totally go off his medication just prior to selecting the jury further raises a *bona fide* doubt as to defendant's fitness. The trial judge placed the burden on defense counsel to inquire into the matter, which defense counsel never did. That is not relevant as it was the duty of the trial court to *sua sponte* order a fitness hearing when a *bona fide* doubt as to defendant's fitness arises. *McCallister*, 193 Ill. 2d at 110-11 ("a judge has a duty to order a fitness hearing *sua sponte* once facts are brought to the judge's attention that raise a *bona fide* doubt of the accused's fitness to stand trial or be sentenced").

Based on Dr. Gutzmann's testimony that defendant was only fit for trial with medication, that "there is a substantial probability that

he would become unfit to stand trial" without the medication, and that he should continue the medication up to and throughout the trial, defendant's failure to receive his medication raised a *bona fide* doubt as to his fitness to stand trial. On this information, the trial court erred in not *sua sponte* ordering another fitness hearing where the State would have to prove defendant fit for trial. See *Griffin*, 178 Ill. 2d at 79 ("Once the fitness question is raised, the burden falls on the State to establish a defendant's fitness by a preponderance of the evidence."). Without the fitness hearing, it cannot be said what effect defendant's failure to receive his medication had on his fitness for trial. Accordingly, we remand, directing the trial court to hold a retrospective fitness hearing to determine what effect, if any, defendant's failure to regularly receive his medication had on his fitness to stand trial. See *People v. Mitchell*, 189 Ill. 2d 312, 339 (2000) ("retrospective fitness hearings are now the norm").

## CONCLUSION

For the foregoing reasons we retain jurisdiction pursuant to Illinois Supreme Court Rule 615(b)(2) and remand this cause for a retrospective fitness hearing. Ill. S. Ct. R. 615(b)(2). After holding the hearing, the trial court shall deliver to the clerk of this court, within 120 days of this decision, a report of the trial court's findings and a record of the proceedings on remand.

Cause remanded with directions. Jurisdiction retained.

JUSTICE KARNEZIS, dissenting:

I respectfully dissent from the majority view that concludes the trial court should have *sua sponte* ordered a fitness hearing based on defendant's failure to regularly receive his medication. I believe that the specific facts of this case are not sufficient to establish a *bona fide* doubt as to defendant's fitness.

Does the fact that defendant, who had been found fit with medication and did not receive his medication two days before trial and again on the day of trial, standing alone, raise a *bona fide* doubt as to defendant's fitness to stand trial? Or, does a judge abuse his discretion where he fails, *sua sponte*, to order a fitness hearing based on the above factual situation?

The majority answers the question in the affirmative and remands this case for a retrospective fitness hearing. I respectfully dissent and suggest that the specific facts of this case are not sufficient to establish a *bona fide* doubt as to defendant's fitness and the trial court did not abuse its discretion where it failed to *sua sponte* order a fitness hear-

ing. The fact that defendant did not receive a portion of his medication on the morning of trial and any of his medication two days prior, standing alone, does not raise a *bona fide* doubt as to defendant's fitness. I, therefore, respectfully dissent.